Approved: _____
Thomas S. Burnett
Assistant United States Attorney

Before: THE HON. ROBERT W. LEHRBURGER
United States Magistrate Judge Southern
District of New York

**23 MAG 5434**

| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
|---|---|
| v. | Violations of 18 U.S.C. §§ 922(g) and 2 |
| RAUL ACOSTA, | COUNTY OF OFFENSE: BRONX |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

JASON LANDUSKY, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE
### (Felon in Possession of a Firearm)

1.  1. On or about May 9, 2023, in the Southern District of New York and elsewhere, RAUL ACOSTA, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a .38 caliber Smith & Wesson revolver, and the firearm was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Detective with the NYPD and I have been personally involved in the investigation of this matter. This affidavit is based on, among other things, my personal participation in the investigation, my review of videos, my review of records, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as a review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my participation in this investigation and my review of criminal history and parole records for RAUL ACOSTA, the defendant, I have learned, in substance and in part, the following:

   a. On or about February 21, 2017, ACOSTA was convicted upon a plea of guilty of attempted assault in the first degree, with intent to cause serious injury with a weapon, in violation of New York Penal Law Section 120.10(1). The same day, ACOSTA was sentenced principally to a term of 54 months' imprisonment, to be followed by five years' post-release supervision.

   b. On or about March 1, 2019, ACOSTA was convicted upon a plea of guilty of attempted possession of dangerous contraband in prison in the first degree, in violation of New York Penal Law Section 205.25(2). The same day, ACOSTA was sentenced principally to an indeterminate term of 18 months' to three years' imprisonment.

   c. ACOSTA was released from prison to parole on or about June 29, 2022. Among the conditions of ACOSTA's parole was a condition that ACOSTA permit his parole officer to visit his residence and search his residence, person, and property. His term of parole was scheduled to expire on or about June 29, 2027.

  4. Based on my review of parole records and my participation in an interview of the parole officer ("Parole Officer-1") assigned to RAUL ACOSTA, the defendant, I have learned, in substance and in part, the following:

   a. As part of his parole, ACOSTA enrolled in a drug-treatment program (the "Program").

   b. On or about May 9, 2023, in the late morning, a criminal justice liaison for the Program informed Parole Officer-1 that, in substance and in part, the following:

    i. Earlier that day, a counselor at the Program had been assisting ACOSTA and observed ACOSTA make what appeared to be gang signs to another person attending the Program ("Attendee-1").

    ii. Attendee-1 asked ACOSTA what was going on, and ACOSTA asked Attendee-1 if he was affiliated with the Bloods or the Crips. Attendee-1 stated that Attendee-1 was not gang affiliated. ACOSTA then displayed what appeared to be a firearm to Attendee-1 and left the Program.

  5. Based in my participation with interviews of Parole Officer-1 and two other parole officers ("Parole Officer-2" and "Parole Officer-3"), I have learned, in substance and in part, the following:

   a. After receiving the information described above in subparagraph 4(b), Parole Officer-1 and other parole officers planned an emergency search of the apartment in the Bronx, New York, at which ACOSTA was residing (the "Apartment"), where he lived with other family members.

   b. On or about May 9, 2023, at approximately 8:00 p.m., Parole Officer-1, Parole Officer-2, Parole Officer-3, and other parole officers went to the Apartment. They were accompanied by officers from the NYPD.

    c. Parole Officer-1 and another parole officer ("Parole Officer-4") knocked on the door of the Apartment. ACOSTA answered the door. He appeared to be sitting on a bed located near the door to the Apartment.

    d. Parole Officer-1 instructed ACOSTA, in sum and substance, to stand up and put his hands behind his back, so he could be handcuffed during a search of the Apartment.

    e. ACOSTA began to comply with Parole Officer 1's instructions, but then recoiled and attempted to close the door to the Apartment. Multiple parole officers entered the Apartment to help control ACOSTA.

    f. ACOSTA grabbed what appeared to be a small black bag (the "Bag") from near the door to the Apartment and threw it further into the Apartment, toward where ACOSTA's brother was standing. As he threw the bag, ACOSTA yelled, in sum and substance, "get rid of it."

    g. Multiple parole officers pulled ACOSTA out of the Apartment and, with the assistance of others, handcuffed ACOSTA in the hallway outside the Apartment.

    h. Parole Officer-2 remained inside the Apartment and located the Bag. Parole Officer-2 opened the Bag and saw that it contained, among other things, a loaded .38 caliber Smith & Wesson revolver (the "Firearm"). Officers from the NYPD subsequently took custody of, among other things, the Bag and the Firearm.[1]

  6. Based on my review of NYPD records and videos, I have learned, in substance and in part, the following:

    a. Following the events described in paragraph 5, NYPD officers transported RAUL ACOSTA, the defendant, to an NYPD precinct.

    b. At the precinct, an NYPD officer ("Officer-1") read ACOSTA a Miranda warning, and ACOSTA agreed to speak with law enforcement.

    c. Officer-1 showed ACOSTA a photograph of the Firearm. ACOSTA stated, in substance and in part, that he recognized the Firearm from the Apartment, that it was his, and that he had it for protection.

  7. Based on information I have received from a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I have learned that Firearm was not manufactured in New York State.

---

[1] After finding the Bag and the Firearm, parole officers conducted a search of several areas in the Apartment. During the search, parole officers found, among other things, an air pistol under the mattress in one of the bedrooms.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of RAUL ACOSTA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

        S/ by the Court with permission
JASON LANDUSKY
Detective, NYPD

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this  11th  day of July, 2023.

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

4